of America, Miss Dodi, Amicus Curiae for the imbalance, Mr. Peters for the appellate. Yes, it's still morning. Yes, still morning. Good morning, and may it please the court. My name is Kendra Dodi, and I have been appointed as Amicus Curiae to present arguments that I have determined to be potentially meritorious in favor of Mr. Jolley's position. In this case, the district court found, based on this court's decision in Jarkissi v. Securities and Exchange Commission, that it lacked jurisdiction over Mr. Jolley's claims that the Merit System Protection Board's administrative review process is unconstitutional. Can you explain what claims are pending in terms of the merit claims with respect to what went before the review boards? Because there were several litigations. Yes, Mr. Jolley has several petitions before the board, before the district court, apparently before the Supreme Court. I know that several have been identified in the record on appeal. I do not know the full extent of what he has presented in various courts or boards throughout the country. But my understanding is that the government has indicated that the Merit System Protection Board proceedings and any federal circuit review appeals have concluded. It is my position that that does not necessarily mean that this appeal is moot. No, I'm not suggesting that. I'm just trying to get a sense of what's left. Like, what other relief is he seeking? So in this particular case, it's on appeal before the court now. Mr. Jolley has raised three claims challenging the constitutionality of the board. Those claims are, one, that the structure of the review process where some claims are routed to district courts while others are routed to the board violates equal protection. Second, that the board and that the board and its administrative judges are unconstitutionally exercising Article 3 power. And third, that the administrative judge's appointments violates the appointments clause. So those are all constitutional arguments that he's presenting in this case. The last one is moot. The last one may be moot, Your Honor. I think that there, it is important to emphasize that the mootness question turns on questions of fact that are not currently in the record before this court. But it's close, right? What questions of fact would that turn on? I believe that it would be useful to see the ratification order itself that the government has identified that the board issued ratifying the appointments of the administrative judges. And it would be useful to know the specific facts underlying the administrative judge's subsequent proceedings in Mr. Jolley's case. Because Lucia says that the actual process that happens after an officer is constitutionally appointed, you need to look at the process to make sure that the initial injury has been fully resolved. And that is the question that is factual and that is not, the record just doesn't exist for this court to allow this court to make an informed decision on that issue. Getting the threshold stuff and get to the heart of what we're fighting about, whether or not Axon applies. That is, whether he can proceed in district court with his so-called constitutional claims. Whether he's bound by Darcy and Elgin and other such cases. Now, the Supreme Court in Axon says, we're going to follow this approach and avoid the Thunder Department in a situation there, which they described as case presenting extraordinary claims involving fundamental, even existential challenges to the structure of the very existence of the agency. You really think that's what's going on here? I think that the scope of Mr. Not that he's, not whether he's raising a constitutional claim, but is he raising a claim of the sort that caught the Supreme Court's attention in Axon? Yes. Extraordinary, existential structure of very existence. Okay. Tell me why so. Yes. Although the scope of Mr. Jelly's claims might not be as broad as those presented in Axon and its companion case, Cochran, he's raising the same type of claim in his complaint before the district court. Namely, whether the three claims that I just listed, the article three issue, the equal protection issue and the appointments clause issue, let's assume it's moot. So we're raising those, the other two. Okay. Why are they existential? They go to the board's ability to hear his claims at all. He challenges the structure of you. Sarah's administrative review scheme at its base. He's not challenging a substantive employment decision, which is what this court held in, um, Darcy and, and, and in other cases such as Elgin and Thunder Basin, when a litigant is challenging the substantive action that Congress has determined should be routed to, and her by an administrative body in the first instance, that should be routed that direction. Whereas in this case, as an axon, Mr. Jolly is challenging the structural review process, extraordinary. And I realized this is a peak at the merits, but given what the Supreme court said in axon, I don't know how you can avoid doing that when they're talking about determining whether they're extraordinary, existential, very existence. We're, we're looking at whether there's any thrust to what's being presented, right? We're looking at the substance of the claims themselves, but not necessarily existential about what he's claimed. What, what, what is the huge thing that worries me to death so that I would allow him to jump what Congress has required. This is a situation once Congress has set up a cause of action and jurisdictional, they, and it's been in existence for a long period of time and Congress has chose not to do what Mr. Jolly wants to do. Why would a court say, no, no, no, we should do it a different way. So Mr. Jolly's claims are not the specific type that Congress has routed to the administrative agency and axon instructs that what the court should do in assessing whether a district court has jurisdiction over when you say not the type, I want to be really particular. What, what, what's worrying you? In other words, I knew when I read axon, what was bothering the court given some recent case law and what the court was concerned about, you knew why they might think that was existential. What is existential here? The existential element in this case, although it doesn't mean that the board itself goes away, it would mean, and that's important and that is important. That's not here. That's not here, but the type of issue that Mr. Jolly raises speaks to the board's ability to hear you. Sarah claims alleging this type of discrimination that Mr. Jolly raises. In this case, he is not presenting any substantive challenge to any particular employment decision, which it would be the type of claim that would be routed directly to the agency because he's raising a substance or a structural challenge to the board's ability to hear his claims at all. That is what routes it to the district court and allows the district court to have jurisdiction. You know, it's funny. We raised, we have a recent decision in this court. I mean, you wonder, you look at a case like this and what kind of mischief are you going to create if you axon literally to say anytime someone says it's structural and I don't think they can really hear this and therefore I get to district court. I mean, there's potential mischief there and I think our court in Loma Linda, I think it said, no, merely because it's more than an insignificant constitutional claim, it doesn't mean we're going to avoid some debate. I completely agree with that. I think that the axon standard creates a tricky question and the court will need to hold the line on making sure that claims like those in Loma Linda and like those in Payne, that where a litigant just frames its issue as constitutional, when they're really challenging the substance of a claim, Congress has said needs to go to the agency. Play it out for me a little bit. It sounds like you're dismantling Congress's structure for these claims. They've already set up. This is not like Congress said, veterans who are black use this approach. Women use a different approach. Hispanic persons have to use a different one. It's nothing like that, right? Correct. If I understand. Yeah, and I want you to play it out. What is it? What is the horror here in terms of you calling it equal protection to call something a failure of equal protection? Maybe it's just me. I need to understand that a little bit better. What are we talking about here? Can Congress not do this? No, I don't think the axon or that my position is that Congress can't route claims to agencies at all. I think that the issue in this particular case is Congress has routed employment discrimination claims to the Merit System Protection Board, right? That is allowable. That can happen, right? Mr. Jolly is not challenging one of those types of claims as an axon. He's raising a challenge that having to go through that administrative process inflicts an injury because he thinks that the board he's claiming he has a right to something. And that's based on his notion that there's a failure of equal protection. What's the failure of equal? I understand I'm supposed to be cautious about merits. I understand that, but I still have to understand because I think that's what Loma Linda is saying. Merely because you present something that's facially looks okay as a constitutional claim doesn't mean we're going to avoid some debate. Okay. What is it that I'm worrying about in this case, as opposed to saying blacks go here and women go there and Hispanics there? I can understand the possible plausibility of what we're talking about there. What is it that's worrisome here when Congress has set up an approach for veterans? You're saying it would be okay if Congress said all veterans have to go to the MSPB, right? Yes. If Congress wants to do that, I don't know. Why they couldn't. Why they couldn't. I have not thought that question through. And they could say all veterans have to go to district court, right? They could, but they have not done so. Okay. So now, okay. The failure to do so causes what problem? Well, Mr. Jolly believes that it violates his attorney. You tell me your best, because you had to have thought about this. I have thought about it. I will clarify for the court that I'm not Mr. Jolly's attorney. So I understand you're helping us and we appreciate that. I think that the merits questions of Mr. Jolly's claims are tricky. I do not know if he will this court needs to get into the weeds of that or really determine if there would in fact be an equal protection violation based on the statutes treatment of veterans who are federally employed. We have to wonder, we can't avoid it, right? And especially when I look at Axon, which talks and uses the words it's using, it's existential and extraordinary. And so that means as a judge, we're human beings that causes us to think, well, is this the kind of claim that really is of that sort? Fundamental, existential, extraordinary. Are we talking about something like that? Because I think what they're otherwise saying is we had to leave it where Congress put it. And Congress said to use the district court in certain set of cases, the MSPB in a certain state court. Axon instructs that the question that is currently before this court and that was before the Supreme Court in Axon is not whether the merits of the claims will ultimately prevail. It's where those claims can be heard. No, I know. But wait, because you got Elgin. Yes. And you've got Loma Linda. You've got cases in which we say we're not avoiding Thunder Bay because choices have been made and we don't see an extraordinary reason to run away from the choice that you send the argument this way or that way. So it's unavoidable that we're going that we're not going to look at the nature of what's being presented, because otherwise anyone can come in and say there's a structural constitutional problem here. Well, that does require the court to look at whether a person's spin of what their claim actually is. It's true. And in this case, as an axon, contrary to Elgin and Loma Linda, Mr. Jolly raises a claim that at its base does raise a constitutional structural challenge to the review process itself. This is not a circumstance where he's challenging the substance of a claim that Congress has routed to the agency. And that is the distinction. And I think this court. So suppose we had a situation where the claim is my neighbor can go and I can't. That's a denial of equal protection. I mean, so I think that this court's explanation in pain, although the proceedings have kind of outrun that that decision, I got mooted. Right. I think that the court's explanation of the litigants spin of its claim is constitutional and its analysis of what that claim actually was. That's precisely the type of analysis that is necessary in light of axon. And in this case, the substance of Mr. Jolly's claims is that he should not have to proceed before the board at all. And having to do so would inflict a here and now injury. I have to at least find a plausible claim. I think that a plot, say, boy, avoid the merits, that means I don't even look at that axon. I mean, axon using the words that it's using, I think the court was at least suggesting we're assuming it's a plausible, indeed, existential, fundamental, extraordinary claim, which is you're even agreeing by your silence that that's not what we're looking at here. But we have to find something that has some meat on it, not just this is constitutional and it denies me equal protection. Well, the distinction in this case, I agree that axon and Cochran did raise really needy, probably plausible, I'm not sure about that, contentions about the SEC and the FTC's ability to hear the claim. This case is much narrower, but the substance of his claim is indistinguishable from those that issue an axon. And that is what means that the district court had jurisdiction. The district court, in assessing whether it has jurisdiction, will be able to decide on a motion to dismiss or in other later proceedings that his claims are ultimately without merit. But just at this initial stage, determining whether the courthouse doors are open to Mr. Jolly, axon says you look at the type of claim that he is raising, and then you can proceed through the Thunder Basin factors. And in this case, you'll get court review at the appropriate moment, not going to be denied for it. You'll get it. That's correct. Loma Linda says just because there's a plausible constitutional claim being raised does not mean we avoid Thunder Bay. That's correct. But the issues and the claims in Elgin and in Loma Linda were the types of substantive claims that Congress had specifically routed to the administrative review proceedings. The problem with that is, and I'm not going to bore you with my hypotheticals because I've thought about it, but you can think of a thousand hypotheticals of really insane things that are not within the compass of the agency's authority. And say, but wait, I'm raising this stupid thing. The agency doesn't decide that stupid thing. And therefore I'm not bound by Thunder Bay. It has to go to district court because my alleged equal protection claim is based on really stupid stuff. And the agency has no authority to decide stupid stuff. So I'm in district court. Really? I think that that's not the case in this I wanted to understand why it was she thought this had this claim had some meat. I mean, again, I don't know your expressions have suggested I haven't come up an easy answer, judge. I'm doing my best, but it's hard. You're right. Yes, it is a tough question. The merits of Mr. Jolly's claims. I'm not sure that they will succeed, but the issue in this circumstance is whether they are the type of claim that Congress has routed to the agency. Let's speak to address ability, then on the address ability point. I mean, as noted in the briefs, I think that or it is clear to me that under Axon and other cases similar to this one, Mr. Jolly has asserted a here now injury of having to proceed through the administrative review proceeding at all. That is fairly traceable to the application of you. Sarah's statutory review scheme and that it would be redressable were a court to conclude that that statutory review scheme is unconstitutional. I mean, there's no I'm jumping into my colleague because I'm too wound up. Keep going. Yeah. Does that mean that so he has nowhere to go because Congress hasn't given him this opportunity? Or does that mean we tell the district court and we tell Congress that we don't care what you wrote because of his alleged constitutional claims? He has to have a right to present this in court, even though he has no cause of action, as Congress has indicated. And we're not sure what the remedy would be because of the APA problem. What does it mean in terms of redressability? I mean, the redressability issue, the issues that the government has raised, I think, ask Mr. Jolly to prove more than is necessary at the standing inquiry. This court and the district court assumes that Mr. Jolly will prevail on the normal. My colleague has focused you. What is even in standing requirement inquiries? We ask counsel. So what's the redress? So it's perfectly appropriate for us to say, what do you envision the redress if he wins? If he wins on the merits of what would we say? What would this court say on the jurisdictional issue? Yeah, I think this court should say on the jurisdictional issue, the district court has jurisdiction over Mr. Jolly's claims because he is not able to effectively bring them before the board and get effective, meaningful judicial review before the federal circuit because his claims are that he should not be even though Congress has given no cause of action and denied jurisdiction and that it's their call, right? Well, I disagree that Congress has denied jurisdiction because of the types of claims that Mr. Jolly has raised. What is the cause of action? So let's suppose we remand it and say that the district court has jurisdiction. Okay, he has a complaint. What is his cause of action? That is a good question. That is a good question. I don't think that this court needs to get into it because the sole question on appeal is whether the district court had jurisdiction in the first place. I think that Mr. Jolly would probably say yes to that. The district court should have jurisdiction based on axon and your interpretation of it. Then what? Then proceedings go on through district court. The district court might assess. But we can't bring the statutes over, like pull over and go grab the claims that are in another proceeding. What's the cause of action? I mean, that really, that's what would occur to all three of us. Because our district court colleagues would be furious if we sent a case back and said, you've got jurisdiction. We haven't the faintest idea what the cause of action is, but do your challenge for the district court to determine. But the district court might also welcome this court's clarification on what of this court's decision and jerks. He remains in light of axon. There is a lot of tension that axon creates with pending before the substance of jerks. These claims are still pending before the Supreme Court. They heard argument, I think, two or three weeks ago. They did hear arguments. So that should be available online. But I'm just saying I've raised that for the point of us doing any type of clarification with axon and jerks while that's been. So this court's decision is still is still valid law, regardless of the further proceedings that have occurred in jerks. Mr. Jerkacies claim he from what I understand that we never know what the higher court's going to do as a former district judge. And you have something going on appeal. We'll say that's not the case. I try. You know, we don't know what the appellate. Yeah, we don't know what the Supreme Court will ultimately hold. But from what I understand, the question, the jurisdictional issue is not what is before the Supreme Court. It's rather Mr. Jerkacies substantive claims about the Seventh Amendment violation with respect to his SEC proceedings and the other substance of his claims. I, the court could do whatever it wants to do. So it might weigh in on this jurisdictional issue. But I don't anticipate that it will affect this court's decision. And regardless of what happens there, this court's decision is still reigning, but it is severely compromised because if I recall, kind of for some clarification from us about applicability of axon. And so that's what I'm getting at about how far do we go in light of a pending case with the Supreme Court? I mean, this, you know, this court can only do what it can do with the law as it currently stands. And it did so with Jerkacy. It read Elgin the best that it could. It read the Thunder Basin line of cases the best that it could. And it reached a decision. Since then, the Supreme Court has issued axon and clarified the law and provided different instructions that conflict with Jerkacy. Currently before this court, that jurisdictional issue is before you and you can only decide it based on the law that exists. There's the Loma Linda, which cuts against Jolly. I disagree with that. I read the Loma Linda opinion very closely. And I think that the majority of that order is very clear that you need to look at the substance of the claims that are being raised. And Loma Linda in that case was not raising the type of structural criticism that Mr. Jolly and the parties in the axon cases were raising. Instead, it was trying to challenge an NLRB proceeding that it asserted violated its constitutional rights. And the majority of that panel didn't buy that characterization of what their claims actually were. And that kind of what the court did, which wouldn't surprise, I think certainly didn't surprise me that they added some language that's cautious, which said merely because it's a plausible constitutional claim that the agency might not address does not mean we avoid Thunder Bay. That's exactly right. And I think that's what we're talking about here. I find a constitutional claim the agency might not address, but it doesn't mean that we avoid Thunder Bay, especially. And this is what really troubles me because I don't otherwise know how to read the Supreme Court, where you can't put it in the category, which is so straightforward, extraordinary, existential, over the top kind of question. The things they were dealing with, we all understood where the what it is we're talking about here. And you're agreeing, you're saying in your and you've done a really good job in trying to present this to us. But you're saying even you couldn't find a lot of meat to it, certainly not existential. On the merits, I couldn't, I haven't assessed it to determine if there is a lot of meat. But Mr. Jolly's claims are exactly the type of claims that were at issue in axon. You don't want to put it that way, because it doesn't make sense. It means as I was trying to come in and raise a stupid issue and say this is not something the agency would consider. And therefore I'm calling it constitutional. And so I'm entitled to be in district court. That can't be the law. Correct. It's not the law that calling a claim constitutional determines where the claim can be heard. Axon says that whether a constitutional claim speaks to the structure of the administrative review proceeding itself is what is determinative. And in this case, Mr. Jolly raises that kind of structural constitutional claim. So let's suppose someone files a lawsuit in district court and says, you know, there's Congress requires there to be an EEOC kind of exhaustion for employment discrimination cases. But I think that that violates article three, because I should just be able to go straight to a judge and have a judge make a determination and not waste my time with this administrative agency. Is that a claim that fits within axon? At first glance, I believe that a constitutional challenge to an exhaustion requirement would probably fit within axon. But as axon instructs, you have to go through the rest of the Thunder Basin factors to make sure that it is it is unable to get meaningful judicial review. If the party were to go through the administrative proceedings, that it is collateral to the claims at issue, which I'm not sure that it that an exhaustion argument would actually be collateral to the substantive claims and that the the claims about the constitutional nature of an exhaustion requirement fall outside of the agency's expertise. And I I'm not familiar with EEOC work. So I don't I don't really know what that last part would look like. But I think that that's the type of analysis that would have to do under axon. The reason I raise this hypo, it's probably like one of the thousand that Judge Edwards has already thought of, is that it seems that one could dream up some sort of article three type challenge to any sort of administrative adjudicatory process by just saying, like, I shouldn't have to go through that process. This claim, just from start to finish, should be before an article three judge, not some, you know, kangaroo court, you know, bureaucrat state, you know, administrative system. And, you know, you could say that about a thousand different things that are in the U.S. code. And we will be opening the floodgates to all of that litigation in the district court, um, based on kind of this construction of an existential challenge. Does that make sense? Yes, that makes sense. And I think that that is a risk of axon's decision. Axon says that the type of structural claims that the parties raised in that case and that Mr. Jolly raises in this case can go straight to district court because they challenged the review process itself. So there is a risk that this could open the floodgates to any kind of challenge to any part of a procedure. However, all of the other jurisdictional requirements that normally apply to cases would still apply. So the party would have to have standing. They would need to have a cause of action. They would need to have a claim that is not moot. And all of those would have to be satisfied. And that's why I started out the proceedings with kind of the relief left. What are we advancing, you know, here? And so I would like a more direct answer to Judge Edgeworth's question about what's the cause of action because what's left if we say yes to you and that axon applies? What do you gain from this? What does the next litigant gain from that? So if this court decides the jurisdictional issue that's before it, Mr. Jolly's case would, I would say that the court should reverse the district court's decision and remand for further proceedings, in which case Mr. Jolly would be able to proceed in the district court. The district court would then have discretion. Then is that reversing all of his former merits hearing findings? No, it would not affect his merits hearing findings or proceedings before the board of the federal circuit. It would only affect the district court's decision in this case. But what's that decision? What's the decision? Yeah, the district court's decision that it lacked jurisdiction. That is what we need. No, no. I mean, so what's the result? Yeah. The result is the case would continue. The government would be free to again. What's the case? What's the case? What's the case? The case is his at least two claims that the review process itself is unconstitutional. A cause of action that Congress has given to the MSPB and the federal circuit. So Mr. Jolly asserts his claims under, I believe it's section 1331, just federal question jurisdiction arising out of the constitution. I don't, I have not assessed the merits of whether that is a valid cause of action. The district court would be free to decide that issue on remand. But what we've said, if somebody just asserts federal question jurisdiction and says that they, they can't really identify a statutory cause of action, but their federal question is that something unconstitutional is being done. We've said that that's akin to mandamus and you've got to meet the mandamus stand. I, I know that Mr. Jolly has brought mandamus actions before. I cannot recall if he mentioned the word mandamus in any of his district court filings. I don't believe that he did. The reason why I raised that is redressability. Mr. Jolly has to show the likelihood of redress, not like theoretic redress. So what's the likelihood of redress where you can't identify a cause of action and the only one that's plausible would be one that would be akin to a mandamus standard. And mandamus requires the showing that basically, you know, it's indisputable that he's entitled to this relief and there's no prior precedent that grants any such relief. So we've held and the Supreme Court has held that under that circumstance, you can't say that there's a clear and indisputable right to relief. So basically, we would just be remanding this for a certain dismissal, either for lack of jurisdiction because it can't meet the mandamus standard or failure to state a claim because there is no claim. But how is that consistent with showing that there is a likelihood of redress? As I understand this court's precedent, the standing inquiry assumes that Mr. Jolly will prevail on the merits of his appeal. He has requested relief that would amount to an order saying that the Merit System Protection Board's review process is unconstitutional and he can go straight to federal court. If that were to be the ultimate outcome of the district court's case, that would redress his claims. There could be barriers such as a cause of action or other jurisdictional issues that could prevent that relief in fact. But at this stage, as I read this court's precedent, Mr. Jolly doesn't have to prove the counterfactual of what the world would look like if he were in fact to prevail. All he needs to do is allege a sufficient injury that is traceable and can be redressed. I don't think that this court needs to get into all of that because the district court did not have the opportunity to assess those or it chose not to assess those issues when it decided that it lacked jurisdiction over Mr. Jolly's claims under jarcossy. I should emphasize that this is unclear and the district court and future panels of this court would benefit from a clarification of what of jarcossy remains in light of Axon. See, what's interesting in this case is that you conceded early on, I think correctly, that if it was just a procedure before the MSPB, he wouldn't have any claim, any so-called constitutional claim. If all of these cases were routed through the MSPB, you're not contending, no, that's constitutionally infirmed. So he's not really challenging the existence of the MSPB. I mean, that's what left out me initially. He's not saying as in Axon that the existence, the structure should go away because of the constitutional claim. Quite the contrary. He's assuming it can exist and he can be made to go there as long as everyone else is made to go there. Right. Okay. So which causes me when I'm trying to, and I really appreciate your effort to deal with this and our pressing you is nothing about you. It's just about the issues. The agency using the Axon formulation, whatever the devil that is, is the agency can still decide its core work, which is one of the things you were concerned about. He's not suggesting they should be removed from their core work, including these kinds of discrimination claims. They can decide all of that. Then the federal circle decide any leftover claims on the constitution. It seems to make perfectly good sense to me, doesn't it? And I don't know why we would do it otherwise. It's not like someone is coming in and saying, as in Axon, this agency can't exist because someone wasn't appointed correctly. They're out of business. That's not what he's saying. He's saying the MSPB is okay. It's just the way the arrangement is now. And I'm saying, well, why wouldn't we accommodate that just by saying the MSPB does what it does, handles its claims. And if he thinks that can be challenged, on these constitutional terms, the federal circuit will decide it. I think the distinction in this case, although he is not challenging the existence of the board itself, he is challenging the USERRA statute structural review scheme of routing different claims to different bodies. And that challenge is what wouldn't be able to be redressed if he were to federal circuit, the court would redress it. If this redressed it, it would be given. I think that Axon instructs that because his challenge is to having to go through the board itself. Yeah, see, that's a piece of it. But part of the axon concern is really the notion that this group cannot exist. This constitutional claim is valid. It cannot exist. If Mr. Jolly were to prevail on his claim that the board cannot hear claims brought by federal employee veterans, that aspect of its work would not exist. So in that way, it's the same type of claim, although on a much smaller scale, much smaller scale than axon. I got you. All right. Thank you. We'll give you some time on rebuttal. Thank you. We'll now hear from Mr. Peters. You're now in. Good afternoon. May it please the court, David Peters for the United States. I think the panel here has rightly recognized that there are real questions about axons application in new contexts like this one. But the court doesn't need to decide that question today because the court lacks article three jurisdiction for the reasons that Judge Child's original question identified. The plaintiff's claims here are freestanding constitutional claims. They aren't tied to any USERRA appeal that he filed with the board or that he planned to file with the board. And so he just lacks standing because there's not concrete injury to which those constitutional claims are rooted. Amicus seems to suggest that plaintiff filed appeals in the past, and that's true. But if he has MSPB proceeding that is pending, then doesn't that tie into an injury? Because if he were to get relief on his constitutional claim, then that pending MSPB proceeding would then have to be, you know, moved to district court, so to speak. So the only board MSPB or board appeals that are even referenced in the pleadings are these two appeals that plaintiff filed in 2018. As we explained in our briefs, those were resolved by a properly appointed AJ in December of 2022. Plaintiff then had the opportunity to seek further review of those appeals before the board. He then had the opportunity to file a petition with the federal circuit. 60 days after that, he again chose not to do so. He had other appeals pending that neither plaintiff nor Amicus cited, but those two have not been resolved. And so we are not aware, the government's not aware of any other pending appeals for the board. Those have been. The other ones that haven't been identified, the government's understanding is that those have been resolved as well. We cited several briefs in which plaintiffs sought review for the federal circuit. The federal circuit has uniformly rejected those claims, both on jurisdictional and merits grounds. And so if the only concrete injury that can be identified is that plaintiff was proceeding before the board and had some issues with that, now that those proceedings are no longer pending and those proceedings are concluding, then there aren't any injuries to redress at all. But he's using axon and saying he couldn't be required to do that. So that shouldn't count against him. He's saying he shouldn't have been made to process his claims for the reasons he asserts. That's certainly what he's saying, but if the only... No, I'm trying to figure out what axon means. Axon assumes that you can't compel. I mean, that's what the court's focusing on. This is an agency, an operation that can't exist and cannot be given the responsibility if he's right on the constitutional claims to decide his case. So why can't he say, I can't count against me on standing grounds. I have standing to come in as an axon and say, there's a constitutional infirmity here because of the way this is set up. And so the structure can't count against me. So it doesn't matter whether I dance through it. It just can't count. No, you... Oh no, don't say no to me. Say no to the Supreme Court. Well, fair. I didn't say it. My point is only as to the article three question, right? Plaintiff can't come to court and just say, I think the MSPB is unconstitutional. That would just be an advice. No, he gave reasons. Of course. I mean, he still needs to show a concrete injury about how he's actually harmed by this and he hasn't shown that. No, no. When you look at the Supreme Court and axon, they're saying the injury is being forced to use, I can't remember their exact word. To proceed through an administrative structure that they think is unconstitutional. Right. But in axon, there wasn't any question that the individuals who responded to the ongoing enforcement proceedings were being subject to those proceedings. And the point is... You're trying to make a distinction, which I've thought about and I don't know what to do with it, between an enforcement proceeding and a claim of benefit proceeding. I mean, in some ways that distinction is tempting, but I don't know how far it gets you. I'm happy to talk about that, Your Honor, but that's actually not the point I'm trying to make. That's the way it was coming across. Well, let me try to clarify that. The point is even coming to court in a certain axon claim that challenges the structure of the MSPB, there has to be some concrete injury or else all the plaintiff is asking for is an advisory opinion. Concrete injury is, I want to seek these benefits. Use this situation. I want to seek these benefits and I'm being told because it's a federal employer, I must go through this structure. And this structure is constitutionally infirm. Supreme Court said in axon, you can't make me use a procedure or enforce something against me in an operation that is constitutionally impermissible. And it's certainly if plaintiff identified proceedings that he intended to bring before the board, that might be a different case. But if you look at the pleadings, Your Honor, his allegations of injury is that he lost employment opportunities because the board is unconstitutional. It's not clear what that means, but it's certainly not an indication that he was going to bring proceedings before the board and it was therefore subject to these unconstitutional proceedings. And so our point is there isn't a concrete injury. No, he did bring proceedings. He had brought proceedings in the past. Those proceedings are now done. And so to the extent that those proceedings were the kind of the... But I mean, I thought the question was, he was saying, yeah, they recently were done, but they can't count against me. And you're wanting to count them against me. Your Honor... Can't count against me. So you can't say my claim, whatever they were, is moot. And my claim should be raised, can be raised somewhere else, not in this arrangement. But Your Honor, in Axon, to the extent that plaintiff and amicus are saying this is like Axon, what the court said in Axon was that the requirement to get immediate review is because there could be no relief after the proceedings are completed. The proceedings are now completed. So there can't be any relief that can be granted to plaintiff. And so the claims are just moot. Proceedings were resolved in 2022, which was after the district court suit. Which is why they're moot. No, the standing is measured at the time he filed the suit. Certainly, that would be, there would be a problem if because... 2020, that's when you measure standing. Sir, mootness though, would be that intervening events have outrun the controversy because the proceedings have been completed. There's, in this case... But the problem is they're going around in circles because Axon says they can't be completed, his claim, based on his claim. They couldn't have been completed in this form. That's what his claim is. They cannot. I had to use it because that's what was there, but they're not really complete. I guess to try to reframe it slightly, Your Honor, if this court were to reverse and somehow plaintiff were to prevail on the merits, which we don't think is at all in any way plausible for all the reasons identified. He has asked the court to, not only to enjoin the board from appointing AJs, but also direct that his claims can be brought in district court. But he doesn't have any, there wouldn't be anything to enjoin. There aren't any more proceedings going on. And so there isn't any live controversy that's still pending. Well, I want to hear what counsel, his point of counsel has to say, because my understanding is he is contesting the MSPP proceedings, which were allegedly resolved in 2022 after the district court. He brought it in time to be able to say, you shouldn't make me go through this. That's his Axon notion. And I don't know why he doesn't have standing in district court to pursue that. I'm happy to have Amicus correct me. Amicus's point on mootness is that there's some kind of disputed factual record. It's not clear what that disputed factual record is. It's a 2022 order of the board. We cited in our brief, but even assuming that is the, that is the argument that they are making. They're not saying that if these proceedings are in fact complete, that the case is not moot. Because if the proceedings are complete, there isn't any live controversy that Mr. Plaintiff has with the board. The proceedings that he says couldn't have happened. The proceedings that he says he could bring in district court. And he's... But following Axon, the Axon notion is those proceedings count for nothing under the Axon formulation. I'm not saying that should be the result here, but that's the Axon result. Though, if you're in a situation where, take the Axon infirmities, if you're in that kind of a situation, those proceedings count for nothing. I think what the court in Axon says is that the reason they can proceed to district court is because if the proceedings have been completing, there's no more relief that can be granted. And the point is the proceedings have been completed and there is no more relief that can be granted. And that is a quintessential mootness claim. But why isn't the sufficient injury the fact of being barred from the proceedings at all? That might be injury if there was proceedings that he identified that he was going to bring. Again, the only ones that we've referenced are the ones that were the only pleadings and only board of appeals at all that he even referenced in the pleadings, the two 2018 ones. And those are the ones that have been resolved. Well, I know you obviously don't like the Axon ramifications, but his claim is the injury is he was forced to go through illegitimate proceedings. And that is a correct notion from Axon. That's what his claim is. He was forced to go through illegitimate proceedings and he wants to remedy that. And the way he can get remedy in his mind is for the district court now to consider his case because whatever they did over there, he's saying counts for nothing because it was illegitimate. That's the way the Supreme Court framed it. You can't shrug that off. That's the way the Supreme Court framed it in Axon. They're saying they're illegitimate. They don't count. And he's saying that's the injury I suffered. I was made to go through that. But that is not actually what plaintiff has pled in his pleadings. As we say in our brief, he didn't identify any proceedings that he was going for the court other than referencing offhand these two 2018 ones. But even if that were the case and he was saying, I want to bring this in district court, he hasn't identified what he would be bringing, like what you say or appeals he would be bringing in district court. Those aren't identified in his brief. And this goes to the addressability point and the cause of action point that this court was raising earlier. If the court was to reverse and send it back down to district court- Are you talking about a lack of a cause of action or what are you talking about? Well, I'm sorry. If this panel was to reverse and send it back to district court, plaintiff would just then be proceeding on standalone constitutional claims. There wouldn't be anything at the end of the day if the court was to- That's the question we've all been raising, counsel. And the other thought is, what's the cause of action? If he's right that he should be able to redo it all in district court because the MSPB shouldn't have gotten its hands on it. You're right. It's a legitimate question. What's the cause of action? The way that it would proceed is to say, I have a USERRA appeal, or I have a claim that I would like to bring before the board. It is a harm to me to bring it before the board. Cause of action is not standalone. Cause of action is not jurisdictional. Certainly. But I'm saying the way it would arise is to say, I agree that there is not a cause of action to assert a standalone USERRA claim because those are the kind of claims that are channeled to the board. I'm saying the way it would potentially rise is to have a USERRA claim, but there isn't even a USERRA claim there. And so if the court was to reverse, in this case, was to proceed, it would just be the district court issuing an advisory opinion about the constitutionality of the Merit System Protection Board. There's no reason, absent some kind of concrete real life effects for plaintiff that the court should do so. And that's why I agree that standing is obviously different than cause of action, but it's the same problem is that there isn't anything concrete here that's underpinning plaintiff's claims. And the only thing that he is cited to, or that AMICUS is cited to, are these proceedings that are now over. And so there isn't anything for the court to do. And that's why, again, given the uncertainty as to Axon's holding and this court's hesitancy to extend Axon into new context, which is the Loma Linda decision, where the court was rightly cautious about extending it to a new circumstance, the court should affirm on the Article III ground. Moving to another issue, in footnote two, you raised the distinction between the AJs and the ALJs. I just wanted to know, has any ALJ heard any part of this matter? No. Obviously, this has been federal court the whole time. The board proceedings, the 2018 ones that were referenced in the pleadings, those were all handled by AJs, not ALJs, which is another reason why this case is different than some other challenges that have questions about the appointment and removability of ALJs. These are AJs. But what's the point that you're trying to make with that distinction? One, just to clarify, that ALJs and AJs are different. And given that one of plaintiff's claims is the now-mooted appointments claim, the fact that AJs are different than ALJs is just a further reason because AJs aren't statutorily protected. AJs are employees that hear cases through board regulations. It's just another reason to think that that appointments claim, which, again, is now moot for several reasons, but another reason why that claim is not meritorious. Is there anything else that plaintiff could ever allow that actually gets them in district court under Exxon back to account of the cause of action? You keep saying not this, but what is that? It's difficult, Your Honor. The Exxon court emphasized the limit of holding. Is there a scenario in which a party brings a claim that raises the same kind of existential, structural, constitutional challenges? Perhaps. Again, we point out that these claims don't arise in the context of Exxon and Jarkizi II arose in the context of enforcement proceedings. They don't arise in the context in which a party is actively seeking redress by Exxon's holding applies here for many of the reasons that Judge Wilkins asked about, like an exhaustion requirement. It's not clear that Exxon applies in those kinds of contexts, but Exxon's holding does have some force, especially for respondents who are in ongoing enforcement proceedings, who are asserting the kind of existential structural claims that were at issue there that aren't really at issue here. So your friend on the other side, Amicus IV, Mr. Jolly, says, you know, we can't really decide this mootness issue because we don't have the ratification order. We don't have anything in the record about, you know, whether all of these MSP proceedings and, you know, review in the federal circuit, et cetera, have been terminated. We have, you know, some representations you make in your brief, but that isn't really in the record. What do we do about it? You know, we cited the ratification order and provided a citation of that. The decisions of the MSPB and the AJs are published. We cited the Westlaw publications for that. This court all the time on, you know, determines that a case is moot based on agency actions. But if this court, if Amicus is right, and this court thinks Amicus is right, and that there really are factual questions that go to whether this case is moot, that's just another reason not to decide the axon question, right? If it's the case that there aren't, there may be the case that there aren't any claims at all that are live that can support this case of controversy, it makes no sense to then extend axon and hold it here. Well, you know, let me give you a judge's first instinct, one judge's first instinct, to your suggestion to try and save us. Based on what I'm looking at in this record, if we took your advice, Mr. Jalabu back tomorrow, and his claim will be in district court, will not go to MSPB, he'll go to district court and say, I'm not taking this claim to district court because under axon, they're constitutionally infirm. And so there's no pending proceeding, nothing has been deciding. I want the district court to decide my discrimination claims. Why would we do that? Well, your answer doesn't address that. And you're being respectfully a little naive in thinking in this case, at least based on my experience, that that's exactly what will happen. He'll come back again. And he'll just go directly to district court if we wrote an opinion in one sort of way, he'll come into district court, really moot? Okay, I'll start again. What I'm saying is, why would we not avoid, why would we avoid trying to grapple with two things? First, the mootness and standing arguments are just foundational article three. If there isn't article three jurisdiction, the court doesn't have authority to rule on it. And so I think it's fair to make a determination. I totally understand that. And on the appointments point, I think it's moot, quite frankly, but on the others, it's not so clear to me. But I hear you. Go ahead. And the second one is, to the extent that a plaintiff or another party brings kind of clearly meritless, equal protection or article three claim in a way that doesn't present the same kind of article three defects that are present here. Yes, maybe then the court, you know, would have the opportunity, a district court have the opportunity to decide Axon's application. But especially given the emphasis that the Supreme Court placed on the limits of Axon's holding, it makes sense to, you know, to the extent that this court is going to, or any court is going to extend Axon holding. Well, what is the paragraph in Axon, I missed it, that says, don't take this too far. I have it right here, Your Honor. I believe it's page 143, Supreme Court 904. As to the grievance, the court of appeals can do nothing. A proceeding that has already happened cannot be undone. Judicial review of Axon structural constitutional claims would come too late to be meaningful. I mean, for many of the same reasons, we think the claims are moot. And then the next paragraph, the limits of that conclusion are important to emphasize. The government notes that many review schemes require parties to wait before appealing, even when doing so subjects them to significant burdens. And so the Axon court was self-conscious about the limits of its holding, and that to the extent that a which just unquestionably would be, right, not only because it's in new claims, but also because they arise in a new context. The court should be, I think, the court should proceed cautiously before doing that, because there is a real concern, as the panel previously recognized, that the floodgates are going to be open to any constitutional claim. I mean, what does the federal circuit do here? The federal circuit has had several claims that plaintiff has brought to them. The one that we cited in our 28J was one in which plaintiff brought a USERRA appeal before the board, lost on the merits, then sought review before the federal circuit. The federal circuit affirmed on the merits and held that plaintiff's challenge to the AJ decision, because the AJ was improperly appointed, was also not merit, was meritless, because the March 2022 ratification order by the board cured any appointments defect that might have been before. And so that's all, they didn't say anything else. But that was just a merits ruling as to that one. There have been other federal circuits. I think I count more than half a dozen involving plaintiff. They have been merits decisions rejecting individual USERRA. Occasionally a jurisdictional question about timing of whether there's been, whether plaintiff had filed the appeal in a timely manner, or whether the board had jurisdiction, but not addressing the kind of, outside of that example. The thrust of your argument is, you read the court to be saying essentially, look, if it's done, if it's already done, we have new rule now, new thinking, but we can't go back and undo what's done. We're not going to say that constitutional infirmity is so grave that we're going to now go backwards. So if what's before us or before another court is done the way it was previously designed to be handled, even though we think there's some, maybe some problems with that design, we're not going to undo that. That's your argument? I just want to make sure I'm understanding. I think that's the implication of the argument. That's not obviously an issue in Axon, but Axon's point that in that specific context, the reason why the parties there could forego traditional review before the agency and then in a federal court of appeals was that the nature of their extraordinary claims required immediate district court review, and that amicus's point is that this case is like Axon and we're, and our argument would be like, well, if that's really true, well, then the, that the proceedings are now done means they're not, there cannot be relief afforded plaintiff. And therefore the claims are moved. Um, and given the particular circumstances of this case, if there's, if there's nothing else, we just ask that the district court judge would be affirmed. All right. Thank you. Right. Ms. Doty, I believe you were out of time, but we'll give you two minutes. Thank you, your honor. I just want to make two quick points. First, we have been addressing a lot of very tricky questions that will eventually need to be answered. Whether there's a cause of action for Mr. Jolly's claims, whether he has standing and whether his claims are moot in light of the proceedings that have occurred before the board and the federal circuit, this court does not need to wade into any of those issues. It can decide the narrow issue on appeal, which is whether the district court erred in determining it lacked jurisdiction based on the court's decision in Jersey and remand the issues of cause of action, standing and mootness to the district court for consideration in the first instance, particularly when there are questions of unresolved fact that would weigh in on those issues. Because your premise is mistaken. I think we do on the first instance in a lot of cases decide mootness and standing. We don't remand mootness and standing cases back to the district court when we have what we need. What do we need that we don't have? I think that this court needs the benefit of a fully developed record on the mootness issues. What has actually happened before the board? What were the consequences of the federal circuit? I am not aware of any, but I mean, we would normally say council conceded that she is unaware and jolly has asserted nothing. There are no pending cases. That is when we would do it. There is nothing pending and there is nothing before the district court that raises something new. It's my understanding of the record. I do. I do want to clarify that because I am not Mr Jolly's counsel, there might there might be things that I am not aware of. He has not communicated with me about the substance of his claims. So he might have pending proceedings before the board. I just don't know about them. But so I'm getting counsel's assurance that she is not aware of any pending proceedings. I am not aware of any pending proceedings as someone who would not be involved in those proceedings, which I take to mean that whatever it was that he felt he presented both to the MSPB and then tried to present to the district court and all of what went to the MSPB in the federal circuit is now gone. I am not sure if that's correct. I know that the district court had a separate case that Mr Jolly brought recently. I believe after the district court in this case issued issued its decision and I don't know what the status of that case is. I also know that he has at least one pending cert petition before the Supreme Court and he anticipates filing another one that might already be docketed. So I know that he's trying to do a lot of things. I think with respect to these same claims, I am not sure what the full extent of that is. But I do think that having the benefit of a full record, which the district court is well positioned to develop and to decide these issues in the first instance, would be consistent with the court's practice that when there are unresolved questions of fact or when the district court hasn't decided these issues in the first instance, it is appropriate to remand that question to the district court. See, I'm resisting my gut resists that because we normally require a party who's before us in appropriate circumstances to assure us that there is some pending claim and we assume that they know that. Now you're in an awkward position and if we don't have that assurance, that will affect how we would think about movements and standing. We don't need the district court to help on that. I understand the court's concern. I think that it is important to recognize that Mr. Jolly has standing over the question that is before this court whether the district court had jurisdiction as Judge Edwards and my friend on the other side were discussing earlier. Axon makes clear that an injury that is alleged that challenges having to proceed through the board proceedings at all is in fact an injury that is traceable to the statutory scheme and that would be addressable by a court order that says that statutory scheme is unconstitutional. So in that way, this court can assess the jurisdictional question only with respect to situations where I if he comes in and just wants to make a generalized grievance, no he's going to fail. If he's arguing in the district court, I just want to make a generalized grievance that this scheme is unconstitutional. For these reasons, he'd fail standing. That is not what he has done in this particular case. That's why I'm curious to know whether there's anything pending because then the standing issue is very serious. If he doesn't have anything pending, at least as I understand the Supreme Court, it's got to be something. From how I read the notice that Mr. Jolly filed with this court shortly before oral argument where he attached one of the docket entries for his pending Supreme Court petition that is from what I understand captioned as a petition for certiorari and or mandamus and I believe that it is related to the federal circuit's decisions in the cases that he's challenging here. I have not looked in depth at that petition or discussed with Mr. Jolly how it relates to his pending proceedings, but I think that there is enough of a question on how that relates to his board proceedings that this court does not need to get into the mootness question. We've looked at that cert petition and it was denied recently. It was denied recently? Yeah. Well, then that might also change the position. In that cert petition or in his notice to this court, he mentioned that he was planning to file another some type of filing before the Supreme Court and I don't know what the status is on that. But at the end of the day, I think that this court needs only to address the specific jurisdictional issue that is an issue here. I think that the discussion that we had earlier with Judge Wilkins about the floodgates being open in light of Axon, that exists regardless of whether this court decides this case on mootness or standing without reaching the Axon issue. But if the court chooses to decide the issue on appeal and determine Axon's impact on its precedent in jerky, that would at least provide clarity for district courts to wade through that flood. You want to send us a draft? Well, Ms. Stote, you were appointed by the court to represent appellant as amicus in this case. We thank you for your very assistance. Thank you very much. We'll take the matter on.
judges: Wilkins, Childs, Edwards